NEALL et al. v. UNION MARINE INS. CO., Limited.

(District Court, S. D. New York. May 16, 1899.)

MARINE INSURANCE—CONSTRUCTION OF POLICY—MASTER'S DRAFT.
 An open policy of marine insurance provided for insurance from time to time "on advances and for disbursements, secured by master's draft, pledging vessel and freight." A certificate was issued thereunder, covering advances by the insured on a master's draft, which did not itself pledge the vessel or freight, but, when negotiated by the insured, the managing owner of the vessel gave a writing, which was attached to the draft, making it payable from first freights received at port of destination, and pledging vessel, owners, and freight for such payment. *Held,* that such draft was within the terms of the policy, the pledge made being within the authority of the managing owner.

This was a suit in admiralty on a policy of marine insurance.

Robinson, Biddle & Ward, for libelants.
Foley, Wray & Taylor, for respondents.

BROWN, District Judge. The above libel is filed to recover under an open policy of marine insurance issued to Peter Wright & Son in 1894, and the certificate issued by the defendant on January 17, 1898, certifying insurance in $1,950 "on advances against captain's draft (cargo white pine deals) valued at and from Halifax to Tralee" (Ireland).

The original policy of 1894 provided for insurance from time to time,—

"On advances and or (for) disbursements secured by master's draft, pledging vessel and freight," etc.

It is admitted that what was intended to be insured in this case was only advances on master's draft secured by a pledge of freights.

On the day prior to the certificate of January 17th, the libelants

doing business under the name of Peter Wright & Son had been applied to by F. A. D. Hancock, the managing owner of the bark Sophia, to negotiate a draft drawn by her master, dated Halifax January 12th, for £390, payable to Hancock's order three days after sight on account of the necessary disbursements of the bark at Halifax. The libelants objected to the form of the draft as irregular, but on the following day agreed to cash it, provided that Hancock, the managing owner, would make it payable out of the freights collected at the port of destination, with a pledge of the vessel and freight therefor. This was agreed to by Hancock. After this agreement, application was made to the defendant for the certificate above mentioned, and it was issued on the same day. On the following day an agreement in the form of a letter signed by Hancock, as managing owner of the bark, addressed to Peter Wright & Son, was attached to the draft, and after describing the draft, stated:

"I hereby advise having instructed Captain Pedersen to pay this draft out of the first freight moneys collected at the port of Tralee, and within ten days after arrival of the vessel at said port, and hereby pledge the vessel, owners and freight in the above sum, in accordance with the customs for settlement of such obligations."

There is no doubt of the power of the managing owner to direct this draft to be paid out of the first moneys collected at the port of destination and to pledge vessel, owners and freight for the application of the freights to such payment, and that is the effect of this letter. When attached to the draft, which was indorsed by Hancock to the libelants, the letter became in substance a part of the draft; it was so intended and so understood, and it should be so construed. As between the immediate parties it, therefore, converted the draft into an instrument in the nature of bottomry (The Lykus, 36 Fed. 919, 921; The Sophie Wilhelmine, 7 C. C. A. 569, 58 Fed. 890), making it payable out of the first freight moneys collected at the port of arrival within 10 days thereafter, and pledged the vessel, owners and freight to the use of the freights for that purpose; this was all that the conditions of the policy required. Such being the nature of the transaction, as between Hancock and the libelants, it was in substance covered by the defendant's policy, and the certificate issued under it. In its original form, the draft undoubtedly was not a draft pledging "vessel and freight," as the policy required; but with the letter attached and forming a part of it, it did so. The defendant was in no way misled by the form of the transaction as a whole. Its agents did not indeed see the original draft, nor the letter attached to it; nor was there any request or desire to see either. All that was necessary for the defendant's protection was, that the draft which it insured, should in fact have the security of the vessel and freight, as the policy required; and this it had.

The objection that the certificate was issued on the 17th, whereas the advance upon the draft was not actually made, nor the letter actually executed, until the 18th, is, I think, immaterial. The bargain between Hancock and the libelants was made on the 17th; the insurance recited the purchase of the draft, as had already been agreed upon; and the purchase was fully consummated on the fol-

lowing day by the execution of the letter and the payment of the money.

I think the draft, with the letter attached, was within the policy, and that the defendant is bound by its certificate issued, and liable for any loss by sea perils thereunder.